# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LOCAL UNION NO. 639,

    Plaintiff,

    v.

AIRGAS, INC.,

    Defendant.

Civil Action No. TDC-17-0577

## MEMORANDUM OPINION

On March 3, 2017, this Court granted a Motion for a Preliminary Injunction filed by Plaintiff International Brotherhood of Teamsters, Local Union No. 639 (the "Union") and thus enjoined Defendant Airgas, Inc. ("Airgas") from relocating its High Pressure Resisting and Liquid Can Repair ("HPRLCR") function unit or its Small Medical Oxygen ("SMO") function unit from its Hyattsville, Maryland facility and from making any staffing reductions or alterations related to those functions. *See* Order, ECF No. 18. On March 14, 2017, Airgas appealed this Court's Order to the United States Court of Appeals for the Fourth Circuit. That same day, Airgas filed with this Court a Motion for Stay of Preliminary Injunction pending the appeal. That Motion is now ripe for disposition. Having reviewed the briefs, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6 (2016). For the reasons set forth below, the Motion is DENIED.

## DISCUSSION

The findings of fact on which the Court based its preliminary injunction are set forth in its prior Memorandum Opinion. *See Teamsters v. Airgas*, ___ F. Supp. 3d ___, No. TDC-17-

0577, 2017 WL 1239259 at *1-4 (D. Md. Mar. 3, 2017). Additional facts and procedural history are provided below as necessary.

## I.      Legal Standard

Pursuant to Federal Rule of Civil Procedure 62, a court "may suspend, modify, restore, or grant an injunction" while an appeal of that injunction is pending. Fed. R. Civ. P. 62(c). A party seeking to stay an injunction pending appeal must show (1) a likelihood of prevailing on the merits of the appeal, (2) irreparable injury if the stay is denied, (3) that the other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by the stay. *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970).

## II.     Likelihood of Success on the Merits of the Appeal

On appeal, the district court's grant of a preliminary injunction will be reviewed for an abuse of discretion, with legal conclusions reviewed *de novo* and factual findings reviewed for clear error. *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). Airgas asserts that it is likely to succeed on the merits of its appeal because this Court made two errors of law: (1) it misapplied the standard for an injunction pending arbitration under the Norris–LaGuardia Act, 29 U.S.C. § 101 (2012), and (2) it failed to hold the Union to its obligation to satisfy all four of the factors required for the issuance of preliminary injunction under *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). The Court discusses each alleged error in turn.

### A.      Standard for an Injunction Pending Arbitration

In *Boys Markets, Inc. v. Retail Clerk's Union, Local 770*, 398 U.S. 235 (1970), the United States Supreme Court held that the Norris–LaGuardia Act's prohibition on issuing injunctions in labor disputes did not divest a federal court of jurisdiction to enjoin a strike where

the union and employer were bound by a collective bargaining agreement that provided for binding arbitration of the dispute giving rise to the planned strike. *Id.* at 253. Lower courts have since interpreted *Boys Markets* to allow federal courts to issue injunctions to maintain the *status quo* where the parties' dispute is subject to a binding arbitration clause in the collective bargaining agreement, even absent a threatened strike. *See, e.g., Lever Bros. Co. v. Int'l Chemical Workers Union, Local 217*, 554 F.2d 115 (4th Cir. 1976); *Aluminum Workers Int'l Union, AFL–CIO, Local Union No. 215 v. Consolidated Aluminum Corp.*, 696 F.2d 437, 441 (6th Cir. 1982). Such *"Boys Markets"* injunctions are designed to preserve the integrity of arbitration and thus should issue only if they are "necessary to protect the arbitral process itself." *Columbia Local Am. Postal Workers Union v. Bolger*, 621 F.2d 615, 617 (4th Cir. 1980). Accordingly, the test for issuance of such an injunction "is whether the conduct proposed must be enjoined because the available arbitral process could not possibly restore the *status quo ante* in an acceptable form were that conduct to be found violative of contract rights." *Id.* at 618.

Airgas asserts that this Court erred as a matter of law by construing the *Boys Markets* exception too broadly. Airgas casts the *Boys Markets* exception as applying only where later compliance with an arbitration order would be *"impossible."* Mot. Stay at 9 (emphasis in original). This position misstates the applicable standard. The United States Court of Appeals for the Fourth Circuit has held that a *Boys Markets* injunction is appropriate where an arbitration award could not "return the parties substantially to the *status quo ante*," *Lever Bros.*, 554 F.2d at 123, or "could not possibly restore the *status quo ante* in an acceptable form," *Bolger*, 621 F.2d at 618. Therefore, the test for a *Boys Markets* injunction is not whether *any* form of compliance with an arbitrator's order is possible, as Airgas suggests, but whether *acceptable* compliance is possible, that is, compliance in a form that would not render the arbitrator's decision "a hollow

formality." *Lever Bros.*, 554 F.2d at 123. It is this standard, based on a concern for the integrity of the arbitral process, that is controlling in the Fourth Circuit, and that the Court employed in issuing the injunction. *See Airgas*, 2017 WL 1239259 at *4 (concluding that Airgas's proposed transfer of operations "would likely cause irreparable harm to the arbitral process because that transfer would amount to a '*fait accompli*' that would render arbitration 'a hollow formality.'") (citing *Lever Bros.*, 554 F.2d at 122–23).

Airgas's real objection to this Court's determination appears to stem from the Court's factual conclusions. Airgas argues that an injunction is warranted only when, for example, there is an "irretrievable loss of workers' primary employment," such as through the "sale or liquidation of an entire division of a company which cannot be unwound. Mot. Stay at 7. The Court, however, made findings of fact that the proposed action would result in the permanent loss of 13 Union positions, and that "the combination here of the physical relocation of entire operational functions and the permanent loss of positions, some of which have already been replaced" were changes to Airgas's operations that could not be unwound. *Airgas*, 2017 WL 1239259 at *6. The Court particularly noted that because Airgas planned to transform parts of the Hyattsville facility—those that house the operations to be transferred—into a storage area for hazardous chemicals needed to bring Airgas into compliance with federal regulations, "for all intents and purposes," Airgas's plan would "amount[] to a shuttering of the factory doors for th[e HPRLCR and SMO] units." *Id.* Notably, Airgas now reiterates, in an Affidavit from its Vice-President of Operations submitted with this Motion, that Airgas will repurpose parts of the Hyattsville location into a hazardous chemical storage facility. Thus, the Court appropriately concluded, under the prevailing legal standard, that an arbitrator's award could not "return the parties to the *status quo ante*." *Airgas*, 2017 WL 1239259 at *6.

## B.     The *Winter* Factors

Airgas further asserts that it is likely to succeed on appeal because this Court failed to require the Teamsters to satisfy each of the four *Winter* factors:  (1) likelihood of success on the merits; (3) likely irreparable harm; (3) the balance of the equities; and (4) the public interest. *Winter*, 555 U.S. at 20.

As to the first prong of that test, likelihood of success on the merits, Airgas asserts that this Court erroneously considered only whether the dispute between the parties was subject to arbitration, and did not, as it was required to do, pass judgment on the merits of that underlying dispute.  However, the Fourth Circuit has made clear that, in *Boys Markets* cases, district courts are not to pass judgment on the merits of the underlying dispute in evaluating the first *Winter* factor.  Instead, the question for likelihood of success on the merits is whether the party seeking the injunction is likely to succeed on its claim that the underlying dispute is subject to mandatory arbitration, not whether it is likely to succeed *in* that arbitration.  *See Drivers, Chauffeurs, Warehousemen and Helpers Teamsters Local Union No. 71 v. Akers Motor Lines, Inc.*, 582 F.2d 1336, 1342 (4th Cir. 1978) (holding that the district court "misconstrued" the likelihood of success requirement to necessitate a showing that the union would prevail on the merits of its dispute); *Lever Bros.*, 554 F.2d at 119 (finding that an injunction properly issued where the district court "equated" the union's likelihood of success on the merits with "the likelihood that the Union would prevail in its contention that the dispute in issue was one for the arbitrator").

Airgas's contention to the contrary relies on a misreading of non-binding precedent.  In *Nursing Home and Hospital Union No. 434 AFL-CIO-LDIU by Mackson v. Sky Vue Terrace, Inc.*, 759 F.2d 1094 (3d Cir. 1985), the United States Court of Appeals for the Third Circuit did not instruct district courts to evaluate the merits of a union's contract dispute in a *Boys Markets'*

case; rather, it noted only that a union needed to show that its arbitration position was "sufficiently sound to prevent the arbitration from being a futile endeavor." *Id.* at 1098 n.3. The Third Circuit then expressly cautioned that to engage in any more stringent inquiry would be to "intrude significantly on the arbitrator's function." *Id.* In *United Food and Commercial Workers Union, Local No. 626 v. Kroger Co.*, 778 F.2d 1171 (6th Cir. 1985), the United States Court of Appeals for the Sixth Circuit nowhere held that, as Airgas claims, a district court "should make some assessment as to whether the Union's contractual position is sound." Mot. Stay at 10. In that case, the district court had "declin[ed] to rule on the merits of the Union's construction of the collective bargaining contract," but had "intimated that there was at least substantial doubt whether the Union's construction of the Agreement was correct." *Kroger Co.*, 778 F.2d at 1176. In reviewing that determination, the Sixth Circuit merely held that the district court had not abused its discretion, noting that it "need not here decide whether the district court was correct in each of its conclusions." *Id.* Airgas therefore fails to cite any precedent that contradicts the binding Fourth Circuit guidance that district courts are not to wade into the merits of the parties' dispute in a *Boys Markets* case.

Airgas's argument on the second *Winter* factor, irreparable harm, is that this Court erroneously used the *Boys Markets* standard for evaluating injury to the arbitral process to evaluate irreparable harm to the Union. Airgas asserts that under *Winter*, the irreparable harm standard is whether the Union's injuries could be fully remedied through "compensat[ion] after-the-fact with money," and that under that standard, the Union did not make the necessary showing. Mot. Stay at 10. Airgas cites no authority for such a finely parsed distinction in *Boys Markets* cases, and its formulation appears to be a thinly disguised attempt to get around the clear instruction that a *Boys Markets* injunction should issue to ensure arbitration does not

become "a hollow formality." *Lever Bros.*, 554 F.2d at 123. Even assuming the propriety of such a distinction, Airgas's argument fails. The Court found that the proposed relocation would do more than put certain employees out of work; it would diminish the bargaining unit itself, both by reducing the size of that unit by 20 percent and by enabling Airgas to set up a competing, non-unionized operation that would prevent the return of those jobs. *Airgas*, 2017 WL 1239259 at *6. Such erosion of the size and power of the Union is not readily compensable with money.

As for the third and fourth *Winter* factors, the balance of the equities and the public interest, Airgas cites no legal error by the Court other than its continuing objection to the Court's application of the *Boys Markets* injunction standard, addressed above. Airgas instead registers its disagreement with the Court's analysis of these factors. Having considered Airgas's arguments, the Court finds no basis to revisit its conclusions that the balance of the equities and the public interest favor an injunction. *Airgas*, 2017 WL 1239259 at *7-8.

The Court therefore concludes that Airgas is unlikely to succeed on the merits of either of its arguments on appeal.

## III. Irreparable Harm to Airgas

Airgas asserts that absent a stay, it will suffer irreparable harm "that cannot be remedied by money." Mot. Stay at 12. Despite this position, Airgas proceeds to delineate the financial costs—and only the financial costs—of being enjoined from relocating the HPRLCR and SMO functions, concluding that, in total, "Airgas will incur over $400,000 in costs as a result of the injunction." Mot. Stay at 13. Airgas asserts that it "could recover these costs, plus reasonable attorney's fees" if the preliminary injunction is reversed on appeal. Airgas thus makes plain that any injury as a result of the preliminary injunction is one that can be wholly compensated after the fact. Such completely compensable harm is not irreparable, so this factor is not satisfied.

7

*Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) ("Where the harm suffered by the moving party may be compensated by an award of money damages ..., courts generally have refused to find that harm irreparable.").

## IV. Lack of Substantial Harm to the Union

Airgas asserts that the only potential harm to the Union as a result of a stay would be a temporary loss of employment, which could be remedied through recalls to bargaining unit jobs and back pay if the positions are reinstated after arbitration. However, this Court found that as a result of the planned repurposing of the space at the Hyattsville facility and the hiring of non-union workers to carry out the HPRLCR and SMO functions at other locations, the proposed relocation would result in the permanent loss of 20 percent of the Union's bargaining unit positions, making an arbitration award unable, as a practical matter, to restore the *status quo ante*. *Airgas*, 2017 WL 1239259 at *6-7. Because the Court sees no reason to disturb this finding, it finds that a stay of the injunction to allow Airgas to proceed with its plans would impose substantial harm to the Union. Airgas has failed to satisfy this factor.

## V. Public Interest

Finally, Airgas asserts that a stay of the preliminary injunction is in the public interest because it would promote the purposes of federal labor policy embodied in the Norris–LaGuardia Act, in particular the reliance on "voluntary arbitration as the process for resolving labor disputes peacefully." Mot. Stay at 14. The injunction, however, does not prevent the arbitration process from resolving this dispute. Rather, the Court has already found that an injunction is in the public interest because it would protect the integrity of the arbitration process by preserving the ability for arbitration to result in "meaningful, rather than hollow" relief. *Airgas*, 2017 WL 1239259 at *8.

Airgas alternatively asserts that a stay of the preliminary injunction is in the public interest because it would promote "Airgas's ability to minimize the risks of noncompliance with DHS regulations" as to storage of hazardous materials. Mot. Stay at 14. However, Airgas has not identified any DHS directive that requires it to build a new storage facility by a date certain or take any other specific action. Nothing prevents Airgas from taking alternative means to improve the storage of hazardous materials that do not require the relocation of the HPRLCR and SMO functions. To the extent that the public has an interest in the appropriate storage of certain materials, it does not have an interest in the specific plan proposed by Airgas. The Court therefore does not conclude that the public interest favors a stay of the injunction.

## CONCLUSION

For the foregoing reasons, Airgas's Motion to Stay is DENIED. A separate Order shall issue.

Date:  June 5, 2017

THEODORE D. CHUANG
United States District Judge